April Rose Clark,

P. O. Box 1081

Florence, AZ 85132

520-678-1114

tiggers333_2001@hotmail.com

Pro Se Plaintiff

```
                    FILED ____ LODGED
                 ✓  RECEIVED ____ COPY

                    APR 2 7 2023

                 CLERK U S DISTRICT COURT
                   DISTRICT OF ARIZONA
                 BY_____DEPUTY
```

## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| April Rose Clark;<br><br>   Plaintiff,<br><br>v.<br><br>Nicole Bartels.<br><br>   Defendant(s). | CASE NUMBER: **CV23-00718-PHX-GMS**<br><br>**CIVIL RIGHTS COMPLAINT** |

## JURISDICTION

1. The Plaintiff.

 A. Plaintiff, April Rose Clark, P.O. Box 1081 Florence, AZ 85132, 520-678-1114, tiggers333_2001@hotmail.com;

 A. The Defendant;

 A. Defendant, Nicole Bartels, DCS Investigation Specialist, 520-407-2919, 2750 S 4th Ave. Tucson AZ 85713, Nicole.bartels@azdcs.gov

Complaint                                             1

A. Federal Question;

A. This court has jurisdiction over this matter pursuant to 42 U.S. Code § 1983, civil action for deprivation of federal civil rights. The Plaintiff claims violations of her rights under the United States Constitution, specifically U.S. Const. amend I, U.S. Const., amend. V., U.S. Const. amend. XIV, § 2.

## CIVIL RIGHTS CLAIM 42 U.S. Code § 1983

2. 42 U.S. Code § 1983;

> A. *Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.*

3. Color of State laws;

> A. Defendants acted under the color of the laws of the State of Arizona, Arizona Rules of Procedure for the Juvenile Court, Arizona Rules of Procedure for the Juvenile Court; and the Administrative Rules of the Arizona Department of Child Safety.

4. Individual capacity;

    A. Arizona Rules of Civil Procedure, and the Administrative Rules of the Arizona Department of Child Safety does not direct officials, case managers, or representatives at the Arizona Department of Child Safety in their official capacity, to violate a respondent's U.S. Const. amend I, U.S. Const., amend. V., U.S. Const. amend. XIV, § 2. in juvenile or dependency proceedings before the Arizona Juvenile Court.

    B. Plaintiff is bringing claims against government officials acting in their individual capacities, violating her constitutional rights, as a result.

    C. Defendants acted in their individual capacity in the injuries and damages claimed by the Plaintiff in this complaint and she seeks relief under 42 U.S. Code § 1983.

5. Sovereign Immunity;

    A. Defendants' conduct outlined in this 42 U.S. Code § 1983 complaint violated the Plaintiff's clearly established federally guaranteed rights under the US Constitution and statutes, which any reasonable DCS case managers in their positions would have been aware.

    B. Under the color of Arizona State Law, and the Administrative Rules of the Arizona Department of Child Safety, the conduct of the Defendants in this complaint was done with forethought and intent, which any reasonable person in their positions would have been aware was injurious to the Plaintiff's person, her civil rights, and her rights of association and intimacy with her own minor child.

    C. Lewis v. Clarke, No. 15-500 (U.S. April 27, 2017) also fleshed out this distinction between individual and official suits, holding that sovereign immunity does not shield state officials when sued in their personal or individual capacity, even if the state would indemnify that employee.

    D. Plaintiff is bringing suit against government officials in their individual capacity, Defendant does not qualify for sovereign immunity.

6. County where cause of action arose is Pinal County.

7. Jurisdiction;

a) This court has jurisdiction over this matter pursuant to 42 U.S. Code § 1983, civil action for deprivation of federal civil rights. The Plaintiff claims violations of her rights under the United States Constitution, specifically U.S. Const. amend I, U.S. Const., amend. V., U.S. Const. amend. XIV, § 2.

## STATEMENT OF FACTS

8. The date of the initial investigation by DCS was 5/18/2022.

9. 5/18/2022 is when DCS stated they received a report for child abuse. DCS did not respond until the following day on 5/19/2022

10. On 5/15/2022 at 6:47PM, Plaintiff's foster daughter was playing in the living room with her biological brother and another foster child. They were watching a cartoon and playing with blocks on the floor. Plaintiff was in the kitchen and had view of them while she was cooking dinner. When Plaintiff turned to look at the children, she realized that her foster daughter wasn't in there anymore. There is a wall that blocks the kitchen from the walkway to the stairs. Plaintiff walked over to see where she went and saw her on the stairs playing. The foster child and her brother loved to jump up on the first step and then jump back down. The child was giggling and playing. Foster child missed the step and face planted into the edge of the step. Plaintiff was rushing to her foster child as Plaintiff's 15-year-old son was also running from upstairs as he heard her fall. Plaintiff directed adolescent son to pick the foster child up and they all went into the bathroom. While in the bathroom Plaintiff and adolescent son cleaned up foster child's bloody nose. Plaintiff, being an elementary school teacher and biological mother of five children, evaluated the fall and bloody nose did not necessitate taking the foster child to the hospital. As a mother and teacher, Plaintiff is aware like most parents, that children have rough and tumbles as part of growing up and minor injuries like bloody noses is part of the course, parenting children.

11. Plaintiff examined foster child to look for openings or broken bones and didn't see anything to concerning at that time. Once the children went to bed later that evening, Plaintiff wrote the incident report for my foster care licensing. Once finished, Plaintiff emailed that form to her

licensing worker. The next day the foster child had bruising on her face. Plaintiff contacted her licensing worker again and she asked for pictures. Plaintiff sent those pictures to her as well. Plaintiff did not have any formal training filling out incident reports.

12. On Tuesday 5/18/2022, Plaintiff's adult daughter, Kaylei Clark, took the foster child to the hospital for a fever. The hospital gave antibiotics and said the foster child had an infection. The bruises were also very dark on this day. Plaintiff provide that documentation to her licensing worker. Plaintiff's older daughter had been babysitting foster child and helping with transportation for the younger kids as Plaintiff, being a teacher, had to go to work.

13. On 5/19/2022, Defendant Nicole Bartels showed up at Plaintiff's house with an officer. Plaintiff was not home, but at the public-school teaching in her profession. During this time Plaintiff's ring camera caught her telling the officer, that if Plaintiff doesn't open the door this would "escalate quickly," as she knew Plaintiff was home. The officer replied, "Maybe you should try calling her." Around 11:00 AM, Plaintiff received a phone call asking where the child was. Plaintiff let them know that foster child was at Head Start in Florence. Plaintiff was unaware that DCS had removed that child from Head Start until later when she texted the Director of Head Start. The Director told Plaintiff that they took the foster child and sent Plaintiff a picture of a sticky note with Defendant Nicole Bartels name and number on it. Plaintiff called immediately to find out what was going on. Defendant Nicole Bartels answered and stated she would be taking the child to the hospital in Phoenix for an exam. Plaintiff asked what it was for and Defendant Nicole Bartels stated that Plaintiff was being accused of child abuse and that she would never see the foster child again. Defendant Nicole Bartels then stated that she isn't going to talk to Plaintiff.

14. Plaintiff alleges violation of her parenting rights during an investigation by the Arizona Department of Child Safety. According to the Administrative Rules of DCS, a Respondent is entitled to meet with a DCS investigator for an interview, a review of the allegations of abuse and neglect, a disclosure of rights and responsibilities of a Respondent during a DCS investigation, the handbook of parent rights, and the outcomes of substantiation or unsubstantiation. Under the color of the state laws of Arizona, the Administrative Rules and Laws of Arizona DCS, Plaintiff's 1st Amendment rights to her children were violated, and her due process 14th Amendment rights under the administrative laws of Arizona Department of Child Safety.

15. After 3:00PM, Plaintiff called Defendant Nicole Bartels to see if she could get information about the DCS investigation, required under DCS administrative laws, but Defendant Nicole Bartels once again stated she isn't allowed to talk to Plaintiff and she would need to speak with the police. Plaintiff was very confused as her due process rights with a DCS investigation was being violated. Plaintiff called her foster licensing case worker as well as the children's case workers. Plaintiff told them what was going on. Around 6:00PM, DCS showed up and removed the other two foster children from Plaintiff's home. Plaintiff's parenting rights were continuing to be violated as she was still not given any information.

16. On 5/19/2022, Plaintiff spoke with the Florence Police Detective, Mr. Helsdingin. He wanted Plaintiff to explain what happened. On 5/20/2022, The Plaintiff's autistic son was questioned at school. The testimony will be submitted as evidence to show Plaintiff is not an abusive parent.

17. The 15 year old son was present during the incident the testimony will be submitted as evidence, as this adolescent child was a witness to the injury, the response by Plaintiff and his testimony as a fit parent should have unsubstantiated any allegations of abuse by DCS. Plaintiff's two other children were not questioned until 7/2022 and their testimony will also be submitted regarding Plaintiff's fitness as a parent. The next month Plaintiff didn't hear from anyone, Plaintiff received a call from Mr. Helsdingin, he requested Plaintiff come to the station for a talk. During this talk, Detective Helsdingin was interested on why Plaintiff didn't take the child directly to the hospital. Plaintiff stated the child only had a bloody nose and that she didn't feel like she needed a hospital visit. Foster child was up playing within 5 minutes of the incident. Plaintiff went back and forth with Detective Helsdingin on taking children to the hospital for a bloody nose. Plaintiff stated that the bruises didn't appear till the next day. That was the last conversation Plaintiff had with anyone from the Florence Police Department.

18. In July 2022, Defendant Nicole Bartels and another worker came to the house and questioned Plaintiff's biological children. That testimony of Plaintiff as a non-abusive and fit mother will be submitted as evidence on Discovery. That was the last time Plaintiff heard from DCS on this matter. During that time, Plaintiff asked when they would speak with her on what happened, a normal investigation under the color of the Administrative Laws of DCS. Defendant Nicole Bartels again stated, "I am not allowed to talk to you." Plaintiff reported her behavior, violations of parent's rights in an investigation under the color of DCS administrative laws, reporting this

behavior to Plaintiff's foster licensing. Plaintiff's licensing worker (Kristen Self) agreed that is not normal behavior and did not understand why the investigator would not speak to Plaintiff, as required during a DCS investigation.

19. During the year, Plaintiff asked multiple times to Kristen Self on updates as the website, and under the color of the Administrative Rules for DCS, Arizona DCS has 45 days to investigate and 60 days to close the case.

20. On 4/6/2023, Plaintiff received a letter in the mail. The letter is dated 3/23/2023 and the envelope stamped from the post office shows 4/4/2023. The letter shows substantiated for child abuse, a grotesque violation of Plaintiff's rights under the color of the Administrative Laws and Rules of Arizona Department of Child Safety. Plaintiff called Defendant Nicole Bartels to find out information as Plaintiff was confused on how they can have substantiated abuse when no one has interviewed the Plaintiff, as required under the Administrative Rules of DCS. Defendant Nicole Bartels didn't reply so Plaintiff asked her again to mail her out the pamphlet and how to appeal, as Plaintiff was unable to find this pamphlet on the internet. Plaintiff asked what happens next as a teacher, Defendant Nicole Bartels said, "Well you're gonna lose your job." Plaintiff asked about her biological children on if DCS would be taking them. In a violation of Plaintiff's parenting rights, and in contrast to these five biological children's testimony that Plaintiff was a fit and non-abusive parent, Defendant Nicole Bartels replied, "Are you going to hit them too?" Plaintiff repeated how can DCS find her guilty of child abuse when there was no evidence, physical or testimonial, that Plaintiff didn't touch the child and wasn't even in the same room with the foster child when the injury occurred. Plaintiff has requested copies of the DCS report and ways to appeal.

21. Defendant Nicole Bartels stated according to Plaintiff's incident report, Plaintiff was standing right next to the foster child during the injury. Plaintiff pulled up the incident report and read it to Defendant Nicole Bartels, nowhere does it state that Plaintiff was near the child. It just stated what the foster child did to cause the incident. Plaintiff asked by applying an ice pack to her face, could that cause the bruises on the child. Defendant Nicole Bartels said she didn't know. Plaintiff also told Defendant Nicole Bartels, that she forgot to even put her son down on the incident report as a witness, that Plaintiff had no idea how to even fill it out. Defendant Nicole Bartels told Plaintiff that she should have put all that into the incident report and basically that she did not

care. Defendant Nicole Bartels stated, "We have all the proof we need with the medical examination." Plaintiff asked what it said Defendant Nicole Bartels replied, "It proves you are a liar." Defendant Nicole Bartels stated that Plaintiff's incident report that she filed does not line up with what the medical exam shows and said the doctor can tell by the bruises it wasn't a step. Defendant Nicole Bartels stated, "Yeah, we can tell it's from being hit."

22. Plaintiff's due process rights were violated under the color of Arizona Department of Child Safety's Administrative Laws, as Plaintiff requested the DCS report several times and have been ignored or told they are not allowed.

23. Plaintiff's constitutional and civil rights were violated by this defendant, causing injuries. Because of this situation, Plaintiff lost a foster child that she was going to be adopting, Plaintiff has PTSD from this as well, she is a teacher and will be losing her job over this. Plaintiff is the mother of five biological children.

24. Plaintiff has an impeccable reputation as a teacher, a foster parent, and the biological parent of five children. Plaintiff has never had any problems or reports.

25. Plaintiff will submit as evidence the DCS interviews with her three biological children, Their testimonies prove Plaintiff is a fit parent and have never viciously hurt a child. In violation of Plaintiff's rights and the Administrative Rules of DCS, they refused to interview Plaintiff as her testimony would be useful to prove she is not a child abuser. Defendant Nicole Bartels did not interview Plaintiff's husband or her 3 stepchildren. That testimony would also prove Plaintiff is not an abusive parent or person. Defendant Nicole Bartels walked into Plaintiff's home and seen that all children had their own beds, food, clean house, and the house was also approved for foster care. Being a foster parent with no previous allegations, history of working with children in the education field as well as being a parent for over 22 years.

Since Plaintiff's due process rights before Arizona Department of Child Safety was grossly violated, Plaintiff alleges this substantiated abuse violates her civil rights. Defendant Nicole Bartels, from the beginning pictured Plaintiff being guilty of child abuse, without any evidence and in violation of a Respondent's due process rights. Several times Defendant Nicole Bartels had made non-factual comments about Plaintiff hitting the foster child. She never provided Plaintiff with evidence that had happened. Defendant Nicole Bartels violated Plaintiff's civil rights by

never interviewing Plaintiff, which again goes against her civil rights as a parent. Plaintiff was not able to defend herself in an adjudication of her parenting rights with the substantiation of child abuse. Firsthand witnesses like Plaintiff's husband and others in the home were not interviewed. Plaintiff's adult daughter who was acting babysitter during the time of the incident was not interviewed.

26. Plaintiff parenting, constitutional and civil rights were violated by this defendants and Plaintiff seeks relief under 42 U.S. Code § 1983.

## INJURIES

27. The injuries incurred to the Plaintiff by Defendants' violations of her constitutionally and federally guaranteed due process and civil rights, and any future and unforeseen injuries from Defendant's violations of the Plaintiff's rights, include, but are not limited to;

28. **Pain and suffering.**

The Plaintiff has been irrevocably injured by the conduct of Defendant by loss of contact, association, and affections with her minor child. The pain and suffering are unmeasurable.

29. **Loss of liberty from these civil rights violations.**

30. Loss of association and alienation of affections with her foster child.

31. The Plaintiff has been grossly injured by the due process and civil rights violations to her person by the Defendant, in the illegitimate interference of her parenting rights, and the resulting loss of association, affection, and intimacy with her minor child, and her soon to be adopted child.

32. The Plaintiff's rights to procedural fairness has already been established by the courts, The right to procedural due process is a constitutionally protected liberty or property interest is concerned, and there is no greater property interest that the association with one's own child. Bd. of Regents of St. Colleges v. Roth, 408 U.S. 564, 570, 92 S.Ct. 2701, 2705 (1972).

33. The injuries are a loss of intimacy and association with her child, such injuries no relief can make Plaintiff whole.

34. The Plaintiff claims injures by Defendants for these claims listed under 42 U.S. Code § 1983.

35. The Defendants violated Plaintiff's right to custody of her own child and violated her federally guaranteed rights of associating with her own child and has been injured by such conduct.

36. Case law supports the Plaintiff claims for relief for the damages caused by the Defendants' violations of her parenting and civil rights.

   a) Troxel v. Granville, 530 U.S. 57 (2000); Stanley v. Illinois, 405 U.S. 645 (1972).

   b) Suboh v. District Attorney's Office of the Suffolk District, 298 F.3d 81 (1st Cir. 2002).

   c) Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999).

   d) Croft v. Westmoreland County child and Youth Services, 103 F.3d 1123 (3rd Cir. 657 (5th Cir. 1999).

   e) Kovacic v. Cuyahoga County Dept. Of child and Family Services, 606 F.3d 301 (6th Cir. 2010).

   f) Hernandez ex rel. Hernandez v. Foster, 657 F.3d 463 (7th Cir. 2011) Whisman v. Rinehart, 119 F.3d 1303 (8th Cir. 1997) -Burke v. County of Alameda, 586 F.3d 725 (9th Cir. 2009).

   g) Malik v. Arapahoe County Dept. of Social Services, 191 F.3d 1306 (10th Cir. 1999) Doe v. Kearney, 329 F.3d 1286 (11th Cir. 20030).

37. The injuries caused to the Plaintiff was intentional and Defendants are liable for damages under Farmer v. Brennan, 511 U.S. 825 (1994).

38. Courts have recognized that the First Amendment protects the fundamental right to intimate association, which includes the familial association between parents and child.

   h) Doe v. Fayette County child and Youth Servs., No. 8-823, 2010 WL 4854070, *18–19 (W.D. Pa. Nov. 22, 2010);

   i) Behm v. Luzerne County child and Youth, 172 F.Supp.2d 575, 585 (M.D. Pa. 2001).

39. Defendant's actions substantially interfere with the Plaintiff's fundamental rights, such as her right to family relationships with her minor child. The Plaintiff has been grossly injured by

Defendant's interference with the intimate relationship with her minor child, and the alienation of affections these several civil rights violations caused the Plaintiff's person.

40. Defendants injured the Plaintiff by their tortuous interference with parental rights, tortuous interference with parental visitation, alienation of affections, and intentional infliction of emotional distress.

## DEMAND FOR RELIEF

41. As a result of these several violations of the Plaintiff' federally guaranteed due process and civil rights perpetrated by the State of Arizona and Defendants, Plaintiff prays the court for the following relief:

42. For these several intentional civil rights violations by Defendants, Plaintiff prays for $2,200,000.00 in relief under 42 U.S. Code § 1983,

43. Due to the egregious nature of Defendants conduct in violations of an innocent parent's civil rights, the Plaintiff prays for $1,500,000 in punitive damages.

44. For compensatory and general damages in an amount according to proof;

45. For past and future psychiatric, behavioral health, and counseling services to the Plaintiff and her minor child due to the psychological damages caused by Defendant to Plaintiff and her family.

46. For pre- and post-judgment interest on all damages as allowed by the law;

47. For costs of suit incurred herein;

48. For attorney fees under existing law;

49. For such other and further relief as the Court may deem just and proper

50. The total amount prayed to the court for is $3,700,000.00 The Plaintiff wants a trial by jury.

Date: 4/25/2023

April Rose Clark, Pro Se Plaintiff

PO Box 1081

Florence, AZ 85132

520-678-1114

tiggers333_2001@hotmail.com